The **ROCK AND ROLL HALL OF FAME AND MUSEUM, INC.,** et al., Plaintiffs,

v.

**GENTILE PRODUCTIONS,** et al., Defendants.

No. 1:96CV899.

United States District Court, N.D. Ohio, Eastern Division.

May 30, 1996.

Regan J. Fay, Deborah R. Schwartz, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Plaintiffs.

870

Joseph W. Pappalardo, Michael Terence Cawley, Gallagher, Sharp, Fulton & Norman, J. Michael Murray, Lorraine R. Barumgardner, Susan C. Margulies, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, Ohio, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WHITE, Chief Judge.

This matter is before the Court upon Plaintiffs' motion for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiffs seek to enjoin defendants from distributing and selling posters and other products which infringe plaintiffs' "ROCK AND ROLL HALL OF FAME" and unique building design trademark. The Court, having examined the exhibits and having examined proposed findings of fact and conclusions of law submitted by both the plaintiffs and the defendants, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff Rock and Roll Hall of Fame and Museum, Inc. is a privately owned, non-profit corporation organized and existing under the laws of the State of Ohio with its principle place of business in Cleveland, Ohio. Plaintiff Rock and Roll Hall of Fame Foundation, Inc., also privately owned, is a non-profit corporation organized and existing under the laws of the State of New York with its principle place of business in New York, New York. Both plaintiffs are collectively referred to herein as "the Museum" or "plaintiffs."

2. Defendant Gentile Productions is an Ohio corporation with its principle place of business in Cleveland, Ohio. Defendant Charles M. Gentile, who resides in Cleveland, Ohio, owns Gentile Productions and has directed and controlled all activities of Gentile Productions pertinent to this action. Both defendants are collectively referred to herein as "Gentile" or "defendants."

3. Plaintiffs operate a world-renowned museum in Cleveland, Ohio devoted to preserving and interpreting the history, art and culture of popular music.

4. Financial support for the Museum is generated from voluntary contributions, sponsorships, admissions, memberships and licensing of its intellectual property.

5. Although the Museum is privately owned, a large majority of its original financing was provided by private investment and secured through publicly issued bonds. The bonds are to be repaid in part by proceeds the Museum receives from corporate sponsors.

6. The Museum corporate sponsors pay for the exclusive right to use the Museum trademarks and advertise their status as an "official sponsor."

7. If the Museum failed to protect its intellectual property rights, including its trademarks, it would risk losing this significant source of income to repay the public bonds. In the event the Museum is unable to repay its bonds, a state guarantee could be triggered demanding state taxpayer money to repay the bonds.

8. The United States Patent and Trademark office granted registration to the Rock and Roll Hall of Fame Foundation, Inc. for the mark "THE ROCK AND ROLL HALL OF FAME" and assigned it Trademark Registration No. 1,509,617 on October 18, 1988.

9. In 1991, the Museum commissioned the world-renowned architect, I.M. Pei to create its building design. The design represents the youthful energy, rebellion and movement of rock and roll music. The design is unique and inherently distinctive. An application is currently on file with the United States Patent and Trademark Office to register the Museum's building design trademark. The Museum building shape has also been registered as a trademark and a service mark with the State of Ohio.

10. Beginning in September, 1995, the "ROCK AND ROLL HALL OF FAME" and building design trademarks have been used to publicize and promote the Museum on television and through the sale of the Museum's officially licensed products.

11. As a result of the extensive advertising and promotional activities involving the "ROCK AND ROLL HALL OF FAME" and building design trademarks, the public has come to recognize these trademarks as being connected with or sold by the Museum, its official licensees and/or official sponsors.

12. Ranking among the best selling items of the Museum's licensed products are posters, postcards and snowdomes depicting the building design trademark.

13. Defendants own a commercial enterprise and have been involved in the practice of producing and selling various posters since 1987. The Gentile poster which is the subject of this litigation was taken as a part of defendants' commercial business and sold for profit.

14. Defendants are currently marketing and distributing posters in the State of Ohio and in interstate commerce very similar to those sold by plaintiffs under the "ROCK AND ROLL HALL OF FAME" and building design trademarks. Defendants' poster, which sells for approximately $45 to $50, consists of a photograph of the Museum building against a background of Lake Erie at sunset. A black border surrounds the photograph with the words "ROCK N' ROLL HALL OF FAME" and "CLEVELAND" printed under the picture. A small signature by Mr. Gentile also appears in the lower right corner of the photograph. Defendants have obtained copyright protection for the photograph. Plaintiffs' poster also depicts the Museum at sunset with Lake Erie in the background. The photograph is surrounded by a white border with "THE ROCK AND ROLL HALL OF FAME AND MUSEUM—CLEVELAND" and the plaintiffs logo printed below the photograph. Both posters primarily consist of the word "CLEVELAND" and the Museum's two trademarks: the building shape and the Museum's name.

15. Prior to offering the posters for sale, defendants contacted plaintiffs to explore the possibility of obtaining the Museum's official sponsorship in exchange for royalties from the poster sales.

16. Plaintiffs sent written warnings to defendants concerning the alleged trademark violations at issue prior to defendants having offered the posters for sale.

17. Defendants' allegations of other infringing products currently available to the public are not supported by any references to licenses or lack thereof.

## CONCLUSIONS OF LAW

1. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1338, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. In order to succeed in obtaining a preliminary injunction, the plaintiff must show a reasonable probability of success on the merits, irreparable injury if relief is withheld, that there will not be substantial harm to others if the injunction is granted and that the public interest would be served by issuing a preliminary injunction. *Frisch's Restaurant Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985).

3. In proving trademark infringement, the plaintiff must establish (1) the trademark is capable of protection and (2) infringement of the mark as demonstrated by the confusion likely to result from unauthorized use of the mark. *Sadler–Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F.Supp. 1287, 1299 (N.D.Ohio 1991).

4. Plaintiffs own the "ROCK AND ROLL HALL OF FAME" trademark and have been granted federal registration of this mark. Plaintiffs also own state registration of the building design trademark and are awaiting federal registration.

5. The ultimate inquiry in determining infringement of either a federally registered mark or an unregistered mark is "likelihood of confusion." *Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir.1996).

6. In determining whether a "likelihood of confusion" exists, the Court must consider the following eight factors: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity be-

tween the marks; (4) the evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *Id.; Homeowners Group, Inc. v. Home Marketing Specialists Inc.,* 931 F.2d 1100 (6th Cir.1991).

7. Inherently distinctive marks are entitled to protection despite a lack of proof of secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

8. Uniquely designed buildings can serve as a distinctive mark. *White Tower System, Inc. v. White Castle System of Eating Houses Corp.,* 90 F.2d 67 (6th Cir.), *cert. denied,* 302 U.S. 720, 58 S.Ct. 41, 82 L.Ed. 556 (1937); *Fotomat Corp. v. Houck,* 166 USPQ 271 (Fla.Cir.Ct.1970); *Fotomat Corp. v. Cochran,* 437 F.Supp. 1231, 1241 (D.Kan.1977). The unique building design is a fanciful mark. *See Champions,* 78 F.3d at 1117. A fanciful mark is the strongest of marks, and thus, it is more likely that encroachment on this mark will produce confusion. *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.,* 834 F.2d 568, 571 (6th Cir. 1987).

9. Actual confusion is not required when there is strong evidence of actual copying of plaintiffs' marks. *See Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812 (1st Cir.1987); *DAP Products, Inc. v. Color Tile Mfg.,* 821 F.Supp. 488 (S.D.Ohio 1993). In such instances, a likelihood of confusion is presumed. *Id.* Moreover, the contention that a defendant's relatively small signature on an allegedly infringing poster would avoid confusion has been rejected. *See Coca–Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183, 1189 (E.D.N.Y.1972). A likelihood of confusion is presumed in this matter before the Court.

10. Considering the fact that defendants' posters are relatively inexpensive, purchasers are not likely to exercise a great degree of care to determine the source of the product. *See Romm Art Creations Ltd. v. Simcha Int'l, Inc.,* 786 F.Supp. 1126, 1140

(E.D.N.Y.1992) (addressing the issue of consumer selectivity in a gallery or poster shop).

11. The Court may infer an intent to deceive the public regarding the origin of the services when defendant uses a mark identical to the trademark at issue. *Wynn Oil Co. v. American Way Serv. Corp.,* 943 F.2d 595, 603 (6th Cir.1991).

12. With regard to proving claims of trademark infringement, the "likelihood of confusion" analysis applied in claims under the Lanham Act is likewise applied when analyzing claims under Ohio statutory and common law. *Yocono's Restaurant, Inc. v. Yocono,* 651 N.E.2d 1347 (Ohio App.1994).

13. The Museum has shown a likelihood of success in proving its federal and state claims.

14. With regard to a showing of irreparable injury, the sixth circuit has held that the trademark owner is irreparably damaged by trademark infringement. *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.,* 670 F.2d 642, 651 (6th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982).

15. Defendants' continued infringement would irreparably damage the Museum's licensing program and revenues. In particular, it would likely have a negative effect on the Museum's ability to sign up new licensees and would likely increase the risk that current licensees may breach or terminate their license agreements.

16. The Court's analysis of the third factor, harm to others, considered with regard to the issuance of a preliminary injunction, requires the Court to balance the possible harm to both parties to determine where the balance of the equities lies.

17. The Court recognizes that defendants will be harmed by the fact that the sales of the infringing posters will be terminated. Contrary to defendants' contentions, however, a preliminary injunction will not deprive defendants of a First Amendment right to free speech. The First Amendment does not accord protection to an "unauthorized reproduction of a trade name or mark." *Coca–Cola Co.,* 346 F.Supp. at

1192. Moreover, as noted by the Supreme Court, for commercial speech to fall within the protection afforded by the First Amendment, it "must concern lawful activity and not be misleading." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). As defendants' poster is misleading as to its source of sponsorship it is not entitled to First Amendment protection.

18. Moreover, defendants would not be deprived of protections afforded by copyright law should this Court issue a preliminary injunction. Copyright law provides no protection for false statements and violations of the Lanham Act. *See Consumers Union of United States, Inc. v. New Regina Corp.,* 664 F.Supp. 753, 764 (S.D.N.Y.1987) (noting that section 43(a) of the Lanham Act "broadly prohibits express or implied false representations made in connection with the sale of goods").

19. In contrast, plaintiffs could be seriously harmed in the event this preliminary injunction is denied. Most importantly, plaintiffs trademarks could be seriously devalued through continued infringement; allowing defendants to continue such infringement may also encourage other potential infringers.

20. The issuance of a preliminary injunction would also serve to protect the public interest. Defendants' infringing use of plaintiffs' trademarks may confuse the public as to its source of sponsorship. Additionally defendants' unauthorized use of plaintiffs' trademarks could harm the Museum financially which could eventually directly impact the public interest. If plaintiffs' trademark assets are unfairly devalued and the Museum loses its ability to repay public financing bonds, taxpayer dollars may be required to repay the bonds. Thus, the issuance of a preliminary injunction would serve the public interest.

### PRELIMINARY INJUNCTION

IT IS THEREFORE ORDERED that defendants (Gentile Productions and Charles M. Gentile), and their representatives, agents, servants, employees, successors, assigns and attorneys and any and all associations and persons acting by, with, through or under them, or any of them, be, and are preliminarily enjoined until further notice from:

(i) Making, selling or using their poster depicting the Museum;

(ii) Using or authorizing or causing others to use in a commercial manner plaintiffs' ROCK AND ROLL HALL OF FAME and building shape trademarks, or confusingly similar trademarks such as the building image and "ROCK N' ROLL HALL OF FAME" used in defendants' poster;

(iii) Conveying the impression to the trade, customers or the public by its displays, advertising, manufacturing, marketing, distribution and otherwise that the products of defendants depicting nothing but plaintiffs' trademarks are manufactured by, licensed by, associated with, or sponsored by plaintiffs;

(iv) Infringing the building shape and "ROCK AND ROLL HALL OF FAME" trademarks in connection with posters or other related products depicting nothing but plaintiffs' trademarks.

IT IS FURTHER ORDERED that defendants, within five days from the date of this order, deliver to plaintiffs' attorney, Reagan J. Fay, Jones, Day, Reavis & Pogue, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, for destruction all copies of defendants' poster in their possession.

IT IS FURTHER ORDERED that defendants, within eight days from the date of this order, serve a copy of this order to each and every distributor, sales agent, and retail establishment selling or offering to sell defendants' posters and that defendants retrieve all such posters which have not been sold and deliver them to plaintiffs' counsel within nine days from the date of this order for destruction; defendants shall report on compliance hereof within ten days from the date of this order.

This preliminary injunction is issued on the condition that a bond satisfactory to the clerk be filed by plaintiffs in the sum of $10,000 conditioned that defendants shall recover

from said bond all costs and damages as may be incurred or suffered by any party found to have been wrongfully restrained hereby.

IT IS SO ORDERED.