NEW YORK RACING ASSOCIATION, INC., Plaintiff,

v.

PERLMUTTER PUBLISHING, INC., d/b/a Classic Gallery of Sport; Leonard T. Perlmutter; and Jenness Cortez, Defendants.

No. 95–CV–994 (FJS).

United States District Court, N.D. New York.

April 9, 1997.

Robin, Bleckler, Daley & Driscoll (Howard Barnaby, Albert Robin, of counsel), New York City, Rice & Justice (Bradley F. Rice, of counsel), Utica, for Plaintiff.

Schmeiser, Olsen & Watts (David M. Lenney, Albert L Schmeiser, of counsel), Albany, Whiteman, Osterman & Hanna (Paul C. Rapp,of counsel), Albany, for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Presently before the Court is Plaintiff's motion for reconsideration pursuant to Rule 7. 1(g) of the Local Rules of Civil Procedure. Plaintiff asks the Court to reconsider two aspects of its July 19, 1996 Decision and Order in this matter.[1] First, Plaintiff asks the Court to reconsider its decision to declare that images of the Saratoga Race Course do not qualify for trade dress protection when used in connection with Plaintiff's souvenir merchandise.[2]

Second, Plaintiff seeks reconsideration of the Court's determination that the First Amendment bars some of Plaintiff's trademark infringement and unfair competition claims. Plaintiff moves in the alternative for certification of the Court's July 19, 1996 Decision and Order for immediate interlocutory appeal to the United States Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1292(b).

---

**1.** This Memorandum–Decision and Order assumes familiarity with the Court's July 19, 1996 Decision and Order in this matter. In that decision, the Court granted the Defendants summary judgment on their fourth counterclaim (which sought the declaratory relief described below) and on two of Defendants' affirmative defenses (the First Amendment and the doctrine of laches). As a result, the Court dismissed all of Plaintiff's trademark infringement and unfair competi- tion claims *except* those involving Defendants' shirts that display reproductions of the paintings "Field of Dreams II—Two Jumps From the Wire!" and "The Winter Place To Be." The Court also denied the Defendants' motion for attorney's fees under the Lanham Act as premature.

**2.** As stated, this declaratory relief was sought in the Defendants' fourth counterclaim.

Also before the Court is a second motion for summary judgment and a renewed motion for attorney's fees by the Defendants.[3] The Court will address these motions *seriatim.*

## Discussion

### I. Plaintiff's Motion for Reconsideration

 Motions for reconsideration are committed to the sound discretion of the district court. *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.,* No. 92–CV–1412 at *1, 1995 WL 293245 (N.D.N.Y. May 10, 1995) (citing *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983)). In general, the three grounds justifying reconsideration are: (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice. *Id.* (citation omitted). " 'The standard for granting a motion for reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.' " *Id.* (quoting *Ruiz v. Commissioner of Dep't of Transp.,* 687 F.Supp. 888, 890 (S.D.N.Y. 1988).

As an initial matter, Plaintiff does not cite to any change in controlling law or submit any new evidence to the Court. Instead, Plaintiff argues that the Court erred in granting the Defendants summary judgment on their fourth counterclaim and on their First Amendment affirmative defense.

### A. Fourth Counterclaim

As stated, in its July 19, 1996 Decision and Order, this Court granted the Defendants' motion for summary judgment on their fourth counterclaim and declared that the images observable at the Saratoga Race Course do not qualify for trade dress protec-

tion when used in connection with souvenir merchandise such as t-shirts. In determining whether the images were entitled to trade dress protection, the Court first had to determine whether the images were "inherently distinctive" when reproduced on souvenir merchandise.

In determining whether the images were inherently distinctive, the Court applied the Second Circuit's reasoning in *Knitwaves, Inc. v. Lollytogs Ltd., Inc.,* 71 F.3d 996, 1005 (2d Cir.1995) (involving sweater designs). In that case, the Second Circuit set forth a new test for determining whether product features are inherently distinctive, and thus capable of obtaining trade dress protection.[4] In *Knitwaves,* the Court evaluated the inherent distinctiveness of the product features at issue using the sole criterion of whether the images were likely to serve primarily as an indicator of source rather than evaluating whether the features were generic, descriptive, suggestive, arbitrary or fanciful. *Id.* at 1008.

Plaintiff takes issue with the Court's decision to apply the *Knitwaves* test in this case. Specifically, Plaintiff argues that *Knitwaves* should be limited to its facts, and that this Court should have applied the reasoning in the Supreme Court's seminal trade dress decision *Two Pesos Inc. v. Taco Cabana Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (involving the interior designs of two restaurants). In that case, the Supreme Court held that inherently distinctive trade dress, like an inherently distinctive trademark, is entitled to protection under the Lanham Act without proof of secondary meaning. *Id.* at 773, 112 S.Ct. at 2759. Plaintiff argues that, in its decision, the Supreme Court implicitly adopted and approved of the *Abercrombie* category analysis as the

---

3. Defendants actually move for summary judgment, for reconsideration, and/or to alter or amend the Court's July 19, 1996 Decision and Order. However, for the reasons stated below, the Court will consider only the Defendants' motion for summary judgment.

4. Previously, courts evaluating whether a particular trademark was inherently distinctive first determined whether the mark at issue was: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Abercrombie & Fitch Co. v.*

*Hunting World Inc.,* 537 F.2d 4, 9 (2d Cir.1976). The latter three categories of marks are per se inherently distinctive and entitled to protection under the Lanham Act without proof of secondary meaning. Descriptive marks, on the other hand, are protectible only if the mark has acquired secondary meaning. Generic marks are never protectible. One of the key issues in the *Knitwaves* case was whether to apply these categories in trade dress cases.

appropriate method for determining inherent distinctiveness in trade dress cases.

Plaintiff further argues that under the *Abercrombie* category analysis, it has created a genuine issue of fact on the issue of inherent distinctiveness. Plaintiff maintains that through the affidavit of Mr. Gerald Lawrence, a former NYRA employee, it has submitted evidence that the design of the grandstand at the Saratoga Race Course is a valuable source of licensing revenue, and that in Lawrence's opinion, the roof line of the grandstand is the second most recognizable structure among horse racing fans, after the twin spires at Churchill Downs.

As an initial matter, the Court finds that the Plaintiff has presented a false dichotomy. In this case, the Court was not faced with applying either *Knitwaves* or *Two Pesos*. The Court had to apply both. Like the sweater designs at issue in *Knitwaves*, the Plaintiff in this case seeks to protect an aesthetic product feature, namely, images of the Saratoga Race Course reproduced on souvenir items such as t-shirts. Therefore, pursuant to both *Two Pesos* and *Knitwaves*, this Court first had to determine whether the images were "inherently distinctive" when reproduced on souvenir merchandise in order to determine whether the images could obtain trade dress protection absent a showing of secondary meaning. In making this determination, however, the Court was bound to apply the Second Circuit's reasoning in *Knitwaves* and ask whether the images are likely to serve primarily as an indicator of source.[5]

■ Other than the conclusory affidavit of Mr. Lawrence, Plaintiff did not submit any evidence indicating that images of the Saratoga Race Course, as they allegedly appear on Plaintiff's products, are likely to serve, were intended to serve, or currently do serve, primarily as an indicator of the source of the products (i.e., NYRA or its licensees).[6] Thus, in light of the evidence that was presented to the Court, and even after drawing all reasonable inferences in Plaintiff's favor, the Court could not find that the lone affidavit of a former NYRA employee was sufficient to create a genuine issue of material fact on this issue.[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (stating that the non-movant must do more than present evidence that is merely colorable, conclusory, or speculative to survive the motion for summary judgment).

Therefore, there being no new evidence submitted nor change in controlling law cited, the Court finds that it was not clear error to declare that Plaintiff does not currently possess any trade dress rights in images of the Saratoga Race Course reproduced on souvenir merchandise such as t-shirts.[8]

5. As stated, the Second Circuit in *Knitwaves*, in circumstances highly analogous to the case at bar, explicitly rejected the category analysis of *Abercrombie*.

6. Moreover, even applying the *Abercrombie* category analysis, the Court would be unable to determine whether the alleged images are inherently distinctive because Plaintiff did not submit a single sample of its souvenir merchandise to the Court.

7. The relevant evidence before the Court consisted only of the Lawrence affidavit submitted by Plaintiff, and sample t-shirts submitted by the Defendants.

8. In further support of its argument, Plaintiff directs the Court's attention to two district court decisions, *Rock and Roll Hall of Fame Museum, Inc. v. Gentile Productions*, 934 F.Supp. 868 (N.D.Ohio 1996), and *Krueger Int'l Inc., v. Nightingale, Inc.*, 915 F.Supp. 595 (S.D.N.Y.1996).

In *Rock and Roll Hall of Fame, Inc.*, the court issued a preliminary injunction after finding that the design of the Rock and Roll Hall of Fame building was inherently distinctive when used in connection with posters. In *Krueger*, the district court explicitly rejected the test announced in *Knitwaves*, and held that the plaintiff in that case possessed trade dress rights in the overall look of its inherently distinctive stackable chairs. Initially, the Court notes that neither *Rock and Roll Hall of Fame, Inc.*, nor *Krueger* is binding authority upon this Court. Thus, they do not constitute a change in controlling law. Furthermore, the Plaintiff in *Rock and Roll Hall of Fame, Inc.*, unlike the Plaintiff in this case, submitted evidence indicating that the images of the Rock and Roll Hall of Fame Building indicate the source of souvenir products containing the image. Finally, while the *Krueger* court distinguished *Knitwaves* by noting that *Krueger* did not involve clothing, the present case, of course, does involve clothing. Therefore, the Court finds both of these cases unpersuasive.

### B. First Amendment

Plaintiff also seeks reconsideration of this Court's decision to dismiss some of Plaintiff's claims under the First Amendment. In its July 19, 1996 Decision and Order, the Court applied the balancing test set forth in *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir.1989). That test requires that the Lanham Act be narrowly construed so as to apply to artistic works "only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.*

On the record presented, the Court found that the Defendants' use of Plaintiff's marks in the titles of Defendants' paintings serves the artistically relevant purpose of describing the scene depicted in the paintings, and that the use of Plaintiff's marks in Defendants' paintings where the mark actually appears in the scene depicted serves the artistically relevant purpose of accurately depicting the scene (realism). The Court also found that the need to avoid consumer confusion in this case is negligible. As a result, the Court held that the Lanham Act should not apply to the Defendants' shirts that display reproductions of these paintings because the interest in free expression outweighs the need to avoid consumer confusion.[9] Plaintiff seeks reconsideration of these findings.

#### 1. *Titles*

■ First, Plaintiff argues that the Court erred in its finding that the Lanham Act does not apply to the Defendants' t-shirts that display reproductions of paintings that use Plaintiff's trademarks in the title. Plaintiff claims that this finding is premised upon a misunderstanding of Plaintiff's admission that the titles of the Defendants' paintings do not function as trademarks. Plaintiff asserts that this admission applied only to Defen-

dants' artwork, not to reproductions of that artwork on souvenir merchandise such as t-shirts. Plaintiff also argues that the Court's application of the First Amendment was overly broad.[10] The Court disagrees.

As an initial matter, the Court's findings in this case were clearly limited to the record presented to the Court. More importantly, however, the Court found that the likelihood of consumer confusion was negligible in this case because the average consumer viewing Defendants' t-shirts would realize that the shirts display reproductions of original paintings and their titles. For example, as outlined in the Court's previous Decision and Order, there are numerous indications of the correct source of Defendants' t-shirts on tags and on the face of the t-shirts themselves. As a result, the Court found that the need to avoid consumer confusion in this case was negligible, as compared to the need to protect an artist's right to utilize a trademark in the title of an artistic work, regardless of whether the artwork is reproduced on canvas or cotton t-shirts.

Therefore, after again carefully reviewing the evidence before it, the Court finds that it did not err in concluding that the First Amendment protects the Defendants' use of Plaintiff's trademarks in reproductions of Defendants' paintings and their titles.

#### 2. *Works Displaying Paintings That Contain Plaintiff's Trademarks*

■ Plaintiff also argues that the Court erred insofar as it found that the First Amendment protects Defendants' t-shirts that display reproductions of Defendants' paintings which incorporate one of Plaintiff's marks, and the mark actually appears in the scene depicted. Plaintiff again argues that

---

9. Note, the Court also found that the interest of free expression does not outweigh the need to avoid consumer confusion with respect to Defendants' shirts that display reproductions of paintings which incorporate one of Plaintiff's marks, and the mark does not actually exist in the scene depicted. For example, the Court found that the First Amendment did not prevent the Lanham Act from applying to Defendants' shirts that display the paintings "Field of Dreams II—Two Jumps from the Wire!" and "The Winter Place to Be," because the NYRA logo does not actually appear in the scenes depicted in these paintings.

10. For example, Plaintiff argues that, under this Court's interpretation, the First Amendment would prevent courts from applying the Lanham Act to t-shirts displaying reproductions of a painting entitled "Coca–Cola." However, Plaintiff's Coca–Cola hypothetical is unpersuasive because, inter alia, the marks at issue in this case are not nearly as prominent or ubiquitous as the "Coca–Cola" mark.

the Court's application of the First Amendment is overly broad. Plaintiff claims that the Court's application of the First Amendment would allow an artist to paint a picture of "GIANTS" stadium, including the "GIANTS" sign that hangs on the side of the stadium, and then reproduce that painting on souvenir items such as t-shirts with impunity.[11] Again, the Court disagrees.

As stated, the Court's application of the First Amendment in this case is limited to the facts and circumstances presented to the Court. Moreover, as previously noted, the Court found that the use of Plaintiff's marks in reproductions of paintings that depict scenes where the mark actually appears in the scene depicted, serves an artistically relevant purpose (realism), while the need to avoid consumer confusion in this case is de minimis. Applying the *Rogers* balancing test to the record presented, the Court decided that the Lanham Act should not apply to these products. For the foregoing reasons, the Court finds that it did not err in concluding that the First Amendment protects these products. Plaintiff's motion for reconsideration is therefore denied in its entirety.

## II. Certification

Next, the Court turns to Plaintiff's motion to certify the Court's July 19, 1996 Decision and Order for interlocutory appeal to the Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(b).[12]

Although interlocutory orders are generally not appealable, under 28 U.S.C. § 1292(b), a district court can certify interlocutory decisions to be reviewed by an appellate court. Section 1292(b) provides, in relevant part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Thus, for an order to be certified, the district court must find that the Order to be certified involves: (1) a controlling issue of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal of that order will materially advance the ultimate termination of the litigation. The granting of certification under this section is solely within the district court's discretion. *Ferraro v. Secretary of U.S. Dept. of Health and Human Services,* 780 F.Supp. 978, 979 (E.D.N.Y.1992).

### A. Controlling Issue of Law

A controlling issue of law need not necessarily terminate an action in order to be controlling. *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24 (2d Cir.1990). It only has to be an issue that could materially affect the outcome of the case. *In re Cement Antitrust Litig.,* 673 F.2d 1020 (9th Cir.1981), *aff'd,* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983).

In this case, the trade dress and First Amendment issues addressed in the Court's July 19, 1996 Decision and Order, and this Memorandum–Decision and Order, are central to the Court's analysis and materially affect the outcome of this case. Therefore, the Court finds that the Court's July 19, 1996 Decision and Order and this Memorandum–Decision and Order involve controlling issues of law.

### B. Substantial Ground for Difference of Opinion

When evaluating whether a substantial ground for difference of opinion exists, the Court must analyze the strength of the arguments in opposition to the challenged ruling. *Flor v. BOT Financial Corp.,* 79 F.3d 281, 284 (2d Cir.1996). "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is

---

11. Like Plaintiff's Coca–Cola hypothetical, Plaintiff's "GIANTS" hypothetical involves a much more prominent mark, which would, in turn, create a much greater likelihood of consumer confusion than the present case.

12. The Court will also consider whether to certify this Memorandum–Decision and Order.

insufficient to demonstrate a substantial ground for difference of opinion." *Id.*

In this case, the legal principles involved are somewhat difficult, and the factual circumstances of this case (i.e., the reproduction of artwork in other media) add a level of complexity to the legal analysis. In addition, the First Amendment balancing test applied by the Court is highly contextual. While the Court is confident that it has come to the proper conclusions, the Court finds that there is clearly room for difference of opinion. Plaintiff's arguments pose some serious questions concerning the *Knitwaves* case, and the extent to which the First Amendment protects reproductions of artistic works.[13] Therefore, the Court finds that there is a substantial ground for difference of opinion in this case.

## C. Materially Advance the Ultimate Termination of the Litigation

Finally, because many of the Defendants' counterclaims in this case are either premised upon, or related to, the trade dress and First Amendment issues addressed in the Court's prior Decision and this Memorandum–Decision and Order, the Court finds that immediate appellate review of these Orders will materially advance the outcome of this litigation.

In light of the foregoing, the Court finds that Plaintiff's motion for certification should be granted, and the Court's July 19, 1996 Decision and Order, and this Memorandum–Decision and Order, should be certified for immediate appeal to the United States Court of Appeals for the Second Circuit.

## III. Defendant's Second Motion for Summary Judgment

The Court now turns to the Defendants' motion for summary judgment. As stated, in its July 19, 1996 Decision and Order, the Court dismissed all of Plaintiff's trademark infringement and unfair competition claims except those involving Defendants' shirts that display reproductions of the paintings "Field of Dreams II—Two Jumps From the

Wire!," and "The Winter Place To Be." It now appears to be undisputed that: (1) the Defendants have never produced or sold shirts displaying reproductions of the painting "The Winter Place to Be," and (2) the NYRA logo was removed from all reproductions of the painting "Field of Dreams II— Two Jumps from the Wire!"

Although these undisputed facts should have been clearly set forth in the Defendants' first motion for summary judgment, in the interest of judicial economy, and in light of the Court's decision to certify this Court's July 19, 1996 Decision and Order and this Memorandum–Decision and Order for immediate interlocutory appeal, the Court will grant Defendants' motion for summary judgment and dismiss the complaint in its entirety for the reasons stated in the Court's July 19, 1996 Decision and Order and this Memorandum–Decision and Order.

## IV. Attorney's Fees

■ Finally, the Court turns to the Defendants' renewed application for attorney's fees pursuant to 15 U.S.C. § 1117(a). The Lanham Act authorizes the award of reasonable attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117. A case is "exceptional" only if the plaintiff's claim was "baseless, capricious, unreasonable, or otherwise pursued in bad faith." *Banff, Ltd. v. Colberts,* 810 F.Supp. 79, 80 (S.D.N.Y.1992) (citations omitted). "This provision was designed, in part, to protect innocent defendants 'against unfounded suits brought by trademark owners for harassment and the like.'" *Id.* (quoting S.Rep. No. 93–1400, *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136).

■ In this case, Defendants argue that the Court's findings, that the First Amendment "conclusively" protects some of the Defendants' products, and that Plaintiff engaged in "inexcusable" delay in asserting some of its rights, support an additional finding that this case involves "exceptional circumstances" warranting an award of attorney's fees. However, as stated, the legal

---

**13.** Also, although this Court disagrees with the reasoning and legal conclusions in the *Krueger* case, there is no denying that *Krueger* is rather powerful persuasive authority in the Plaintiff's favor.

concepts and factual circumstances of this case are both unique and complex, and there is no evidence indicating that Plaintiff brought this lawsuit to harass the Defendants. Although the Court ultimately found that Plaintiffs' claims lacked merit, the Court does not find that they were baseless, capricious, unreasonable, or were otherwise pursued in bad faith. Therefore, the Defendants' motion for attorney's fees must be denied.

### Conclusion

After carefully considering the papers submitted, the arguments of counsel, the Court's previous Decision and Order, and the entire file in this matter, it is hereby

ORDERED that Plaintiff's motion for reconsideration is DENIED; Defendants' motion for summary judgment is GRANTED, and the complaint is DISMISSED in its entirety; Defendants' motion for attorney's fees is DENIED; and Plaintiff's motion for certification of this Court's July 19, 1996 Decision and Order in this matter, as well as this Memorandum–Decision and Order, is GRANTED, and the Orders are hereby CERTIFIED for immediate interlocutory appeal to the United States Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**