**UNITED STATES of America**

v.

**Lili CHIOCHVILI, Defendant.**

**No. 99–CR–34 (LEK).**

United States District Court,
N.D. New York.

Feb. 25, 2000.

Honorable Daniel J. French, United States Attorney, Northern District of New York, James T. Foley U.S. Courthouse, Albany, NY (Carlos A. Moreno, Assist. U.S. Attorney, of counsel), for the United States of America.

Office of William P. Fanciullo, Albany, NY (William P. Fanciullo, Esq., of counsel,), for defendant.

## DECISION AND ORDER

KAHN, District Judge.

In this criminal action, Defendant is charged with transporting three aliens in the United States in knowing or reckless disregard of the fact that they were present in the United States illegally in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and with conspiring to do the same in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). Presently before the Court is the Government's motion for reconsideration of the Court's 1 December 1999 order that granted in part and denied in part Defendant's motion to suppress statements Defendant made between the time Government Agents started questioning her and the time they advised her of her *Miranda*[1] rights. *See United States v. Chiochvili,* 81 F.Supp.2d 393 (N.D.N.Y.1999).

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 467–68, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Warren, C.J.).

## I. Standard of Review for Motions for Reconsideration

 Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g), unless otherwise governed by Fed.R.Civ.P. 60. The Government submits that the moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (Mot. Recons. Ct.'s Decision to Suppress Gov't's Evid. (hereinafter "Mot. Recons.") at 1 (Doc. 50, 13 Dec. 1999), *quoting Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (Calabresi, J.).) The "clearly erroneous" standard of review applies to motions for reconsideration. Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C–TC 9th Ave. Partnership*, 182 B.R. 1, 3 (N.D.N.Y.1995) (McAvoy, C.J.).

In the present case, the Government does not contend that the first ground, an intervening change in controlling law, applies. Although the Government does state that it wishes to draw the Court's attention to certain testimonial evidence, that evidence was before the Court when it made its previous ruling. Thus, the Government is not contending that the second ground, the availability of new evidence not previously available, applies. It appears that the Government is instead arguing on the basis of the third ground, that its motion for reconsideration should be granted in order to correct a clear error of law or prevent a manifest injustice.

 This is a demanding standard. It is not enough ... that [the moving party] could now make a more persuasive argument .... "[M]ere doubt on our part is not enough to open [up] the point for full reconsideration." The law of the case will be disregarded only when the court has "a clear conviction of error" with respect to a point of law on which its previous decision was predicated.

*Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981) (Friendly, J.) (citations omitted) (quoting *White v. Higgins*, 116 F.2d 312, 317 (1st Cir.1940), and *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964) (Friendly, J.)). A simple difference of opinion, no matter how deep it runs, will not warrant reconsideration. "[A]ny litigant considering bringing a motion for reconsideration must evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *In re C–TC 9th Ave. Partnership*, 182 B.R. at 3.

## II. Timeliness of Motion

 Defendant argues that the Government's motion for reconsideration is untimely. "Motions for reconsideration ... may be served not later than **TEN CALENDAR DAYS** after the entry of the challenged judgment, order or decree." L.R. 7.1(g). Defendant notes that the Court's decision was filed 1 December 1999; the Government filed and served its Memorandum of Law and Affidavit in support of its motion for reconsideration on 13 December 1999, and filed its Notice of Motion on 15 December 1999. Therefore, Defendant asserts, the motion was served and filed later than ten days after the decision, and should be denied as untimely.

At first glance that appears an obvious conclusion, but Defendant has not properly calculated the time period. "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a). Accordingly, the 4th, 5th, 11th and 12th of December must be excluded in the computation of this ten-day period. Computed properly, the Government's Memorandum of Law and Affidavit were filed eight days

after the Court's decision, and its Notice of Motion was filed ten days after the decision. The Government's motion is timely.

Defendant's counsel should have known the proper rules for computing the pertinent time period. Nevertheless, the Court also acknowledges that L.R. 7.1(g) on its face appears to set forth a very straightforward requirement, but, in conjunction with the Federal Rules, does not really mean "*calendar* days," but "*business* days." This method of stating time periods, in which an ostensibly plain-language requirement invisibly presumes the reader's knowledge of a separate provision in the rules, is not ideal.

## III. *Discussion*

■ As detailed in the Court's earlier decision, the events in question began when Canadian authorities alerted United States Government Agents to suspicious activities near the international border. (Untitled mem. at 3 [2] (Doc. 44, 16 Aug. 1999) (hereinafter "mem.").) The Agents established surveillance positions near the border, and observed individuals making a surreptitious crossing of the border, through the woods and under cover of night. (*Id.* at 2.) They then observed suspicious actions by a car that picked up the individuals who had crossed the border on foot. (*Id.*) Soon thereafter, a Border Patrol Agent, John Letourneau, stopped the vehicle the agents had observed, and questioned the Defendant, who was driving, and her three adult passengers. Defendant was "*Mirandized*" not at the arrest scene (as stipulated by the Government, Suppression Hr'g tr. at 63 lines 7–9 (Doc. 42, 4 Aug. 1999)), but at the Border Patrol station to which she was subsequently taken. (*Id.* at 39 lines 12–20.)

The Government argues that at the beginning of Agent Letourneau's questioning of the vehicle's occupants, the nature of the stop was still a detention for investigatory questioning, preliminary to an arrest. Accordingly, the stop at that point lacked the coercive character of an arrest, and a recitation of the *Miranda* warnings to those being questioned was not required. The Government cites *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), in support of its contention that questioning of individuals by law enforcement officials in such circumstances does not need to be preceded by a recitation of *Miranda* rights.

The Government represents the Court's reasoning, in its decision to suppress, as finding that Defendant was "in custody" because the Defendant was not free to leave. (*See* Mot. Recons. at 2.) That criterion would certainly not be adequate for establishing the fact of custody. A driver whom an officer pulls over for speeding, or a driver going through customs at a border crossing, may not leave at any time she pleases, but in neither case do we ordinarily consider her "in custody," and the officer with whom she interacts need not—and surely will not—recite the *Miranda* rights to her. The distinguishing characteristic of such stops, however, is their presumptively transient nature. A reasonable person in either case would expect to be on her way in a few minutes, after receiving a ticket or a warning, or answering routine customs and immigration questions.

The Court's decision that the Defendant was in custody from the time she was stopped at the arrest scene is tightly implicated with the set of facts leading to the stop, facts that strongly indicated acts establishing probable cause and justifying an arrest. It is those facts and the probable cause arising from them that compel the Court's finding that Defendant was in custody from the time Agent Letourneau stopped her, as surely as if he had actually

---

**2.** The memorandum failed to include page numbers, as does the Government's memorandum in support of its present motion; citations to each document are the Court's page count.

uttered the words, "You're under arrest," at that moment.

The Government asks the Court to find the stop of Defendant's car in the same class as that which the Supreme Court, in *Brignoni–Ponce*, described as a limited stop and inquiry, in which an officer "may question the driver and passengers about their citizenship and immigration status, and ... ask them to explain suspicious circumstances." 422 U.S. at 881–82, 95 S.Ct. 2574. The stop in this case, however, is clearly distinguishable from the stops that were the focus of the case in *Brignoni–Ponce*. This is obvious from the factors the Supreme Court discussed in explaining how a court may decide if there was reasonable suspicion to stop a car in the border area. Those factors involve whether the vehicle or the passengers' behavior fits a general profile—a style of car of a certain size may be well suited for smuggling people, and passengers trying to hide may arouse suspicions—and whether circumstantial evidence, such as that relating to usual patterns of traffic on the stretch of road, reasonably draws an officer's attention to a particular vehicle. *Id.* at 884–85, 95 S.Ct. 2574. Notably, the Supreme Court described *indirect* indicia of unlawful actions, which allow an officer to focus on a particular vehicle as being *more likely* to be engaged in unlawful activity, and worthy of intensified scrutiny as an officer attempts to learn whether those suspicions were justified.

In the present case, in contrast, the Border Patrol Agents and Canadian authorities had *directly* witnessed, by seeing or hearing, behavior that, taken as a whole, they could almost certainly conclude was unlawful. Having heard and seen what he had, knowing what his colleagues had heard and seen, and having seen evidence such as the forest debris on the pants legs of the passengers in the car, Agent Letourneau by any reasonable standard had probable cause to take the car's occupants into custody. It is at such a point that the *Miranda* warnings must be required, whether or not an officer has actually said, "You're under arrest." The criteria for determining the time custody begins and *Miranda* warnings thereby become mandatory must allow for this manner of inquiry; clearly, if a court could not recognize the existence of custody until the point the officer orally confirmed the arrest, then law-enforcement officials could simply avoid saying those words and thereby avoid the obligation of reading a person in custody her rights.

The Court has acknowledged that when Agent Letourneau made this stop he was entitled to ask the vehicle's occupants for proof of identity and citizenship. *Chiochvili*, 81 F.Supp.2d at 396–97 at—. That is, he could make these inquiries not because the information from them was necessary to legitimate the arrest of the vehicle's occupants—he already had enough information for that—but simply because he might plausibly get answers that would let him know if he were making a mistake, and therefore must let those persons go on their way.

As for the Government's request that the Court reconsider Agent Letourneau's testimony (*see* Mot. Recons. at 4), the Government is not suggesting that the Court missed any evidence in its earlier decision. It simply wants to reargue this point, and get the Court to change its mind about the weight it accords different portions of the Agent's testimony. Absent any indication of a manifest injustice, that is not a proper basis for a motion to reconsider.

Thus, the Court must conclude that its earlier decision in this case was not clearly erroneous or manifestly unjust. To reiterate, the Court's differences with the Government arise because the Government misapprehended the Court's legal reasoning concerning the nature of the stop of Defendant's car, and, to put it plainly, because the Government wishes the Court had weighed one portion of an Agent's testimony more heavily, and another portion less heavily, than it did. Such differences of opinion, as Chief Judge McAvoy

has pointed out, simply are not a proper basis for granting a motion to reconsider. *In re C–TC 9th Ave. Partnership,* 182 B.R. at 3. The Court's reasoning was not flawed by a clear error of law with regard to the nature of the stop of Defendant's car, and its weighing and evaluation of the evidence simply did not work a manifest injustice. The Court will therefore DENY the Government's motion for reconsideration.

The Court, as it has done previously, directs the Government's attention to L.R. 10.1(a), which requires that all documents presented to the Court for filing have "pages consecutively numbered." Once again the Government has submitted a memorandum—in this instance seven pages long—without page numbers.

## CONCLUSION

For the reasons stated above, it is hereby:

ORDERED that the United States' motion for reconsideration of the Court's Decision and Order, granting in part Defendant's motion to suppress statements purportedly made by Defendant at the scene of the arrest prior to the time she was advised of her *Miranda* rights, is **DENIED;** and

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.