**JOHN AND VINCENT ARDUINI INCORPORATED, d/b/a Heritage Cleaning Company, Plaintiff,**

v.

**NYNEX and Bell Atlantic Corporation, Defendants.**

**No. 97–CV–1562(LEK/DRH).**

United States District Court, N.D. New York.

Jan. 8, 2001.

Stephen J. Waite, Office of Stephen J. Waite, Albany, NY, for John and Vincent Arduini Inc., Plaintiff.

Mark S. Mandel, Robert W. Gaffey, Megyn M. Kelly, Jones, Day Law Firm, Carol R. Abramson, Bell Atlantic–New York, Legal Department, New York City, John T. Mitchell, Tobin, Demf Law Firm, Albany, NY, for NYNEX, Bell Atlantic Corp, Defendants.

### DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is Defendants' motion for reconsideration or in the alternative to certify for interlocutory appeal. For the following reasons, Defendants' motion for reconsideration is GRANTED in part and DENIED in part and to certify is GRANTED.

### I. BACKGROUND

A. *Factual Background*

Plaintiff, John and Vincent Arduini, Inc. d/b/a Heritage Cleaning Co. ("Heritage"), and Defendant NYNEX[1] entered into a contract in 1987 whereby Plaintiff agreed to provide cleaning and related maintenance services for various buildings in New York State that NYNEX owned. Over the course of the next ten years, Plaintiff expanded its business with NYNEX, procuring numerous cleaning and maintenance contracts throughout New York, Massachusetts, and Vermont. According to Plaintiff, strains began to appear in its business relationship with NYNEX when it was awarded a cleaning contract in the "413 Zone" located in western Massachusetts.

Because the "413 Zone" contained a large Hispanic population, Heritage employed numerous individuals of Hispanic descent to assist it in carrying out its duties under the "413 Zone Contract" with NYNEX. In performing its duties under the "413 Zone Contract," Plaintiff was required to interact with Phillip Boire, the NYNEX property manager in that area. According to Plaintiff, Mr. Boire had a deeply rooted dislike of Hispanics and referred to them, among other things, as "dumb Puerto Ricans" and "spics."

When Mr. Boire learned that a supervisory position within Heritage was available, he recommended that two Caucasian workers receive consideration for the job. Heritage refused to appoint either of these workers, and instead promoted Ramon Arcila, a Heritage employee of Hispanic descent, to the position. Plaintiff contends that when Mr. Boire learned of this promotion he told one of its principals, John Arduini, that it was "his funeral" and proceeded over the following years to falsely accuse Heritage of failing to perform its duties under the "413 Zone Contract" with NYNEX.[2]

As a result of Mr. Boire's actions, Plaintiff claims that its previously untarnished reputation became sullied and that it was excluded from bidding on additional NYNEX contracts in 1994, 1995, and 1996. Additionally, Plaintiff argues that Mr. Boire's actions caused Defendants to terminate unlawfully Heritage's "413 Zone Contract" one month prior to its expiration and not to renew a preexisting New York cleaning contract upon its expiration. In defense to these claims, Defendants allege that Plaintiff's under-performance on ex-

---

**1.** Plaintiff initially contracted with New York Telephone, Co. and New England Telephone and Telegraph, Inc. These entities were, at all relevant times, subsidiaries of the NYNEX Corporation. At the time Plaintiff filed this suit each was doing business as "NYNEX." In July of 1997, NYNEX merged with Bell Atlantic. Although Defendants argue that Bell Atlantic never assumed the rights or liabilities of NYNEX, and, as a consequence, is

not a proper party to this litigation, this Court declines to address this issue now and refers to both parties collectively as "Defendants."

**2.** These accusations were made to members of management within NYNEX as well as on reports, evaluations, and letters filed with various other individuals within NYNEX.

isting contracts and administrative changes within NYNEX regarding the procurement of contracts were the reasons why it terminated its business relationship with Plaintiff. To further support their argument that racial animosity did not play a role in their decisions regarding Plaintiff, Defendants point out that replacement companies hired to fill Plaintiff's duties in the "413 Zone" contained the same proportion of minority employees as Heritage.

### B. *Procedural History*

Plaintiff filed this complaint in 1997 alleging that Defendants' actions against it were unlawfully discriminatory, in violation of 42 U.S.C. § 1981. Plaintiff also alleged that Defendants embarked on a course of malicious and unlawful conduct over the course of their business relationship that was designed to injure its business reputation. Specifically, Plaintiff alleged that Defendants defamed and committed a prima facie tort against it in violation of New York State's common law.

In June of 1999, Defendants filed a motion for summary judgment arguing, in part, that because Plaintiff was a "for profit" corporation wholly owned by two male Caucasian shareholders, it lacked standing to assert a claim under 42 U.S.C. § 1981. Additionally, Defendants argued that Plaintiff failed to establish a prima facie case on its discrimination, defamation, and prima facie tort claims. In a tersely worded opinion issued on March 30, 2000, this Court concluded that Plaintiff did have standing to assert its discrimination claim against defendant and that it had met its prima facie burden regarding this claim.

The Court also concluded that summary judgment in favor of Defendants on Plaintiff's defamation and prima facie tort claims was not warranted but neglected to explain its reasons for this decision. Defendant subsequently moved this Court to reconsider this decision or, in the alternative, to certify the standing issue for interlocutory appeal in April of 2000. It is this current motion that currently sits before the Court.

## II. DISCUSSION

### A. *Standard for Reconsideration*

Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g), unless otherwise governed by Fed.R.Civ.P. 60. The "clearly erroneous" standard of review applies to motions for reconsideration. The moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995).

Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C–TC 9th Ave. Partnership,* 182 B.R. 1, 3 (N.D.N.Y.1995). Defendants' basis for this motion is that this Court made a clear error of law or needs to correct a manifest injustice because of numerous errors contained in the Court's earlier decision. Although this Court enjoys broad discretion when making a determination to reconsider on this ground, *Von Ritter v. Heald,* 876 F.Supp. 18, 19 (N.D.N.Y.1995), it will not disregard the law of the prior case unless "the Court has a 'clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981).

### B. *Plaintiff's Standing Under 42 U.S.C. § 1981*

In order to have standing to assert a claim under 42 U.S.C. § 1981, Plaintiff must show that Defendants' alleged intentional discrimination caused injury that the

Court can redress via the current suit. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Without the sufficiency of each of these three elements of standing, injury, causation, and redressability, the Court is barred from adjudicating the merits of Plaintiff's claim by the "case and controversy requirement" expressed in Article III of the United States Constitution. *See id.*

▇▇▇▇ The injury component of standing is typically satisfied if a plaintiff can show that it suffered a deprivation that is not hypothetical, conjectural, or speculative. *See Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Fulani v. Bentsen*, 35 F.3d 49, 52 (2d Cir.1994). The injury alleged must be "distinct and palpable." *Warth*, 422 U.S. at 501, 95 S.Ct. 2197; *Nash v. Bowen*, 869 F.2d 675, 677 (2d Cir.1989). Causation is established if a litigant can show that the injury "fairly can be traced to the challenged action." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). To the extent that an injury is self-inflicted or due to the plaintiff's own fault, the causal chain is broken and standing will not be established. *See Petro– Chem Processing, Inc. v. Envtl. Protection Agency*, 866 F.2d 433, 438 (D.C.Cir.1989). Finally, a plaintiff must demonstrate that it will obtain, at a minimum, a probable "benefit from winning [the] suit" in order to meet its burden of showing that a federal court can redress the injury alleged. *See Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir.1994); *see also Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

▇▇▇▇ In addition to these constitutionally required elements of standing, there are other "prudential" elements of standing. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474– 75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The prudential elements of standing are built upon the premise that certain dis-putes are better left to coordinate branches of government or are not suitable for adjudication in the current proceeding. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Thus, courts will decline to exercise jurisdiction when a litigant alleges a generalized grievance more appropriate for resolution by the political branches of government, alleges a claim on behalf of third parties, or alleges a claim that falls outside the "zone of interest" of a particular statute. *See id.*

▇▇▇▇ There is no dispute that Plaintiff has met the constitutional requirements to assert standing in the instant proceeding. The injuries asserted, premature termination and loss of cleaning contracts, are distinct and palpable. They are not based upon conjecture. Moreover, Plaintiff's allegations, if true, show that the loss of these contracts is directly traceable to the discriminatory pattern of conduct instigated by Mr. Boire. Finally, it is clear that monetary damages can compensate Plaintiff for the alleged loss of these contracts.

▇▇▇▇ What is disputed is whether the prudential elements of standing dictate against this Court adjudicating the merits of Plaintiff's claim. In support of its argument that they do, Defendants point out that Plaintiff is a "for profit" corporation owned by two male Caucasians. Defendants rely upon *Village of Arlington Heights v. Metropolitan Housing Devopment Corp.* to support their argument by pointing to language in the case that states "[a]s a corporation, [Plaintiff] has no racial identity and cannot be the direct target of the petitioner's alleged discrimination." 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450.

As pointed out in this Court's earlier decision, Defendants' reliance on this statement in *Arlington Heights* is completely misplaced. In *Arlington Heights,* the language quoted must be read in context of the Court's discussion on prudential limitations of standing at issue in the case. The Court was concerned that Plaintiff's

claim was at "heart" a claim that the Defendant's actions discriminated generally against "racial minorities in violation of the Fourteenth Amendment." *Id.* If the Court allowed such a claim to stand, the corporation, in essence, would be allowed to assert the rights of discriminated minorities, third parties, and not the individual corporation. *See id.* Thus, the Court concluded that for purposes of this claim, the corporation had no racial identity. *See id.*

Not only is this not the situation in the instant suit, as Plaintiff is alleging discriminatory retaliation against it because of Defendants' actions, courts have consistently read the *Arlington Heights* statement that Defendants are relying upon in this manner. *See Triad Assocs., Inc. v. Robinson,* 10 F.3d 492, 499 (7th Cir.1993); *Hudson Valley Freedom Theater, Inc. v. Heimbach,* 671 F.2d 702, 704–07 (2d Cir. 1982); *Rosales v. AT & T Information Systems, Inc.,* 702 F.Supp. 1489, 1493–95 (D.Colo.1988). Defendants are correct in pointing out that although the above cited cases read the *Arlington Heights* statement they rely upon in the limited manner so described, they never held that a "for-profit" corporation owned by Caucasians has standing to assert a claim under 42 U.S.C. § 1981 for the corporation's support of a minority employee in the face of a client's racial bias. This failure is because none of the above cited cases ever had that issue squarely presented.

The Courts have opined, nevertheless, that "the *Arlington Heights* limitation on § 1981 standing for a corporation should not be construed as applying to situations where a corporation alleges that it was injured because of its relationship with a person of minority racial identity." *Rosales,* 702 F.Supp. at 1495. Given that Caucasians have standing to assert violations of § 1981 in their individual capacity when subject to retaliation for refusing to support discrimination or maintaining a relationship with a minority,

> it follows logically that ... there is no reason why ... a corporation, even one

without a minority racial or ethnic identity, should not be allowed to assert a claim under § 1981. In effect, the Court's concern in *Arlington Heights* that a plaintiff-corporation does not have a racial identity is not relevant where the § 1981 plaintiff could be a white person. In determining whether a plaintiff has standing under § 1981, no rational basis justifies distinguishing between nonminority persons and racially "neutral corporations."

*Id.* at 1495–96.

This rule makes intrinsic sense. To accept Defendants' argument that Plaintiff has no standing because of its corporate status would create a paradox insulating individuals who apply invidious techniques designed to compel corporations into discriminating against their own employees while at the same time leaving the corporation no recourse with which to protect itself from this pressure. Such a result is at odds with the basic purposes of § 1981. As such, this Court does not conclude that it made a clear error of law when it held that Plaintiff had standing to assert its § 1981 claim against Defendants. Consequently, Defendants motion to reconsider this ruling is denied.

### C. Prima Facie Case Under 42 U.S.C. § 1981

In order to establish a prima facie case under 42 U.S.C. § 1981 for the alleged indirect discrimination at issue and defeat a motion for summary judgment, Plaintiff has the burden of showing by a preponderance of the evidence that: (1) it belongs to a protected class; (2) it was performing its duties satisfactorily; (3) it was discharged from its duties; and (4) the discharge occurred in circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997). Upon satisfaction of this burden, Defendants are obligated to articulate a legitimate nondiscriminatory

reason for their challenged actions. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. If the Defendants proffer such a reason, the burden shifts back to the Plaintiff to prove by a preponderance of the evidence that the professed nondiscriminatory reason is simply a pretext for discrimination. *See id.* at 804, 93 S.Ct. 1817; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■■■ As discussed in the preceding section of this opinion, a corporation that refuses to discriminate against its employees at the request of a client and is then retaliated against for this decision has standing to pursue a claim of intentional discrimination under 42 U.S.C. § 1981. Underpinning this conclusion is the fact that, had the Caucasian owners not chosen to incorporate, they could bring a claim of intentional discrimination against the party retaliating against them in their individual capacities. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Alizadeh v. Safeway Stores*, 802 F.2d 111, 114 (5th Cir.1986). In cases where a Caucasian asserts a claim for retaliatory discrimination, Courts do not require the plaintiff to show that it is a member of a protected class to meet its prima facie burden as such a showing is inapplicable to that fact situation. *See McDonald*, 427 U.S. at 279, 96 S.Ct. 2574. In a situation where a corporation claims retaliation, as is the situation here, the Court concludes that the corporation need not show that it is a member of a protected class to meet its prima facie burden as such a showing is also inapplicable to that fact situation.

The circumstances surrounding the second element of Plaintiff's burden are sharply disputed. Plaintiff alleges that it satisfactorily performed its duties under the "413 Zone" throughout the contract's term. In sharp contrast to this allegation, Defendants provided the Court with over a dozen affidavits, many with attached letters and photographs, indicating that tenants of the buildings Plaintiff was supposed to maintain were dissatisfied with their building's appearance and cleanliness. During a random spot-check of one of the buildings, conducted by an employee of Defendant, the state of the building checked was described as an "embarrassment."

Plaintiff's proffer of admissible evidence includes letters from Defendants' employees praising its work within the "413 Zone" and other zones. In addition, Plaintiff provided countless site evaluations compiled by Defendants' employees within the "413 Zone" and other zones indicating that Plaintiff's cleaning services were adequate. Moreover, Plaintiff put forth evidence indicating that it provided cleaning services on behalf of Bell Atlantic in 72 buildings for more than 1,000 days in the "413 Zone." Although the Court recognizes that Plaintiff's offer of proof regarding the satisfactory performance of its duties is not compelling, given the volume of services Plaintiff provided to Defendants in the "413 Zone," it is possible that a rationale jury could conclude that the complaints and other evidence Defendants offered on this point are outweighed by Plaintiff's evidence. As such the Court was not clearly erroneous when it denied Defendants' summary judgment motion on this point.

Neither party disputes that Plaintiff was not awarded a contract which bid upon,[3] discharged from the "413 Zone" contract prior to the contract's expiration, and denied the opportunity to bid on three further contracts.[4] Rather, the parties dis-

---

**3.** The contract which Plaintiff bid upon but did not receive was the "New York Zone Contract."

**4.** The three contracts Plaintiff alleges that it was precluded from bidding upon were the

"Bypath Zone Contract," "Central Massachusetts Zone Contract," and "Southern Vermont Zone Contract."

pute whether these actions gives rise to an inference of discrimination. The evidence Plaintiff provided indicates that Mr. Boire refused to work with Ramon Arcila after Mr. Arcila's promotion and forwarded volumes of complaints about Plaintiff's performance to various individuals within NYNEX following this promotion.

Additionally, replacement companies hired to fill Plaintiff's position following its termination, although composed of a similar percentage of minorities as Plaintiff, did not place minorities in supervisory positions as did Plaintiff. Given that the Court's duty on a motion for summary judgment is to "draw all inferences in favor of the non-moving party," the Court, although recognizing the tenuousness of Plaintiff's claim, concludes that a rationale jury could utilize this evidence to infer that Defendants' refusal to award Plaintiff a contract, early termination of the "413 Zone Contract," and denial of Plaintiff's request to bid on three contracts was due to discrimination.

### D. *Defendants' Non–Discriminatory Reasons and Pretext*

Defendants' articulation of legitimate non-discriminatory reasons for their actions against Plaintiff, including Defendants' creation of a "cross-functional team", desire to have all new zone contracts in New England commence simultaneously, and Plaintiff's poor cleaning record all, shift the burden back to Plaintiff to show that these reasons are pretextual. The Court will address each of Defendants' non-discriminatory reasons as they relate to each of Plaintiff's alleged losses in turn.

#### i. New York Sector Contract

▓ Defendants legitimate non-discriminatory reason for failing to award Plaintiff the "New York Sector" contract rests upon the fact that it created a "cross-functional team" to evaluate bids submit-

ted for that contract. According to Defendants, the team, composed of individuals other than Philip Boire, utilized a series of objective criteria based on a variety of non-discriminatory factors to award the contract. Defendants argue that a lack of discriminatory pretext is indicated by the fact that the winner of the New York contract bidding process sub-contracted the snow-removal portions of the contract to Plaintiff without any objection from Defendants.

In opposition, Plaintiff provided deposition testimony from Defendants' employees indicating that documentation from Mr. Boire identifying nonperformance issues with Plaintiff was sent to "cross-functional team" members responsible for awarding the "New York Sector Contract."[5] Furthermore, Defendants provided evidence indicating that Plaintiff's experience was a factor taken into account when awarding the contract. In light of the admitted influence Mr. Boire exerted on the cross functional team and the possibility that the cross-functional team relied upon allegedly falsified documentation from Mr. Boire when deciding to award the New York Sector contract, this Court concludes that material issues of fact exist as to whether the proffered non-discriminatory justification surrounding Defendants refusal to award the New York Sector contract to Plaintiff was pretextual. *See, e.g., Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 676 (1st Cir.1996) (holding that because the alleged discriminator was in a position to influence defendant company's decision-making, plaintiff tendered enough evidence to render a proffered non-discriminatory justification pretextual and thereby defeat summary judgment); *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 410 (2d Cir.1991) (stating that remarks made by individuals with "substantial influence" over plaintiff's employment raise genuine issues of fact on issue of pretext); *see also Rizzo v. Amerada Hess Corp.,* No. 99–CV–0168, 2000 WL

**5.** *See* Arduini Decl.Ex. P.

1887533, at *5 (N.D.N.Y. Dec. 29, 2000) Therefore, the Court was not clearly erroneous to deny Defendants summary judgment on this claim.

ii. Early Termination of the 413 Zone Contract

 Defendants' proffered legitimate justification as to why it terminated Plaintiff's "413 Zone" Contract one month early is based upon the premise that all new zone contracts, for administrative reasons, were to commence at the same time. Defendants point out that Mr. Boire argued against early termination of this contract and that the practice of early termination was a normal business pattern of Defendants when effectuating zone changes. Furthermore, Defendants provided evidence indicating that the contract itself allowed Defendants to terminate it upon thirty days notice to Plaintiff and that approximately ninety contracts, some with many months left in their terms, were ended at around the same time as Plaintiff's contract to further Defendants' policy of having all new contracts commence at the desired starting date.

Plaintiff has provided no evidence to indicate that this justification was pretextual. In fact, Plaintiff admitted in its depositions that early termination of zone contracts occurred prior to termination of the "413 Zone Contract" and that these terminations resulted in consolidation and substantial savings to Defendants. Given these facts, the Court concludes that Plaintiff has not met its burden to show that Defendants' proffered legitimate justification for early termination of the "413 Zone Contract" was pretextual. Consequently, it was clearly erroneous for the Court to deny Defendants' summary judgment on Plaintiff's claims surrounding early termination of the "413 Zone Contract." The Court, therefore, now grants Defendants motion for summary judgment on this point.

iii. Bypath Zone Contract, Central Massachusetts Zone Contract, and Southern Vermont Zone Contract

Defendants' legitimate non-discriminatory justification regarding its refusal to invite Plaintiff to bid on the "Bypath Zone Contract," the "Central Massachusetts Zone Contract," and the "Southern Vermont Zone Contract" is built upon Plaintiff's performance deficiencies in the "413 Zone." As already discussed, material issues of fact exists as to the adequacy of Plaintiff's performance in the "413 Zone" and Mr. Boire's influence on the cross functional team that decided whether to invite Plaintiff into the bidding process of the "Bypath Zone Contract." The Court therefore declines to reconsider its earlier decision refusing Defendants' request for summary judgment for their refusal to invite Plaintiff to bid for the "Bypath Zone Contract."

The "Central Massachusetts Zone Contract" and "Southern Vermont Zone Contract" bidding processes, conducted prior to the creation of the cross functional team, were controlled by Defendants' contract manager, Mr. Anderson. Mr. Anderson testified to receiving information from Mr. Boire about the adequacy of Plaintiff's performance in the "413 Zone" and to relying upon Mr. Boire's assessments of Plaintiff's performance as part of his duties. As such, material issues of fact exist as to Mr. Boire's influence on Mr. Anderson and his decision to refuse Plaintiff's entry into both the "Central Massachusetts Zone Contract" and "Southern Vermont Zone Contract" bidding processes. Thus, the Court was not in error in denying summary judgment as to these two contracts and declines to reconsider that decision now.

E. *Defamation*

 Defamation, whether by libel or slander, is an injury to a person's reputation. *See Cohen v. New York Times Co.,* 153 A.D. 242, 243, 138 N.Y.S. 206 (2d Dep't 1912). A libelous statement is generally

one that is written or printed, while a slanderous statement is usually uttered orally. *See Ostrowe v. Lee,* 256 N.Y. 36, 38, 175 N.E. 505 (1931). Regardless of whether the defamation is classified as libel or slander, a plaintiff seeking to recover damages for any alleged defamation must show: (1) a false and defamatory statement concerning the plaintiff; (2) publication of the statement to a third party; (3) fault on the part of the defendant; and (4) injury to the plaintiff. *See Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993).

 Typically, words which directly injure or prejudice the reputation of someone in their trade, occupation, business, or profession are considered slander per se. *See Vacca v. General Electric Credit Corp.,* 88 A.D.2d 740, 740, 451 N.Y.S.2d 869 (3d Dep't 1982). When an individual seeks to recover damages for words deemed slander per se, the individual does not need to show damages or injury. *See id.* Instead the Court presumes injury from the bare fact of publication. *See Corrigan v. Bobbs–Merrill Co.,* 228 N.Y. 58, 65, 126 N.E. 260 (1920).

 Plaintiff's claim for defamation, not substantively addressed in this Court's prior opinion, is a result of a conversation that Mr. Boire had with a subcontractor. According to Plaintiff, Mr. Boire told the subcontractor that Plaintiff was a "bad company" who could not do the job. Nevertheless, the subcontractor still hired Plaintiff to conduct the work Plaintiff sought.

Plaintiff's offer of proof to substantiate that this conversation took place is completely deficient. Plaintiff's field supervisor, Ed Kosinski, stated in an affidavit submitted in opposition to Defendants' original summary judgment motion that the subcontractor told him that Mr. Boire made the alleged statements to him. Mr.

Kosinski's testimony is inadmissible hearsay.

Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Mr. Kosinski's affidavit declares that, "Mr. Filantrante further indicated to me that Mr. Boire told him that Heritage was no good and that he did not want Heritage in his buildings." Mr. Kosinski's testimony was offered to prove the truth of the matter asserted in that statement, namely that Mr. Boire told Mr. Filantrante, the subcontractor, that Heritage was no good. It therefore falls squarely within the purview of the hearsay rule and is inadmissible.[6] *See Shafii v. PLC British Airways,* 22 F.3d 59, 64–65 (2d Cir.1994).

When this result is combined with the fact that both the speaker, Mr. Boire, and listener, Mr. Filantrante, deny that the conversation Plaintiff's hearsay testimony referenced took place, the deficiency in Plaintiff's defamation claim becomes more apparent. Plaintiff did not meet its burden to show with admissible evidence that the false and defamatory comments alleged were actually made. Consequently, the Court was clearly erroneous to deny Defendants summary judgment on Plaintiff's defamation claim. The Court reconsiders that initial ruling and grants Defendants' summary judgment motion on Plaintiff's defamation claim.

F. *Prima Facie Tort*

 A prima facie tort occurs when an individual inflicts intentional harm, resulting in damages, without excuse or justification by an act or series of acts which would otherwise be lawful. *See Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984); *ATI, Inc. v. Ruder & Finn,* 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977). In

**6.** The hearsay rule also bars introduction of the letter attached to Mr. Kosinski's affidavit that memorialized this conversation for the same reasons.

order to prevail on this claim, Plaintiff must also show that Defendants' actions were motivated by "disinterested malevolence." *See Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). Furthermore, any party asserting a claim for prima facie tort must plead and prove special damages. Such damages are actual temporal damages causally related to the alleged acts. *See Lincoln First Bank v. Siegel,* 60 A.D.2d 270, 280, 400 N.Y.S.2d 627 (4th Dep't 1977)

In the instant case, Plaintiff alleges, as with its discrimination claim, that Defendants, through Mr. Boire, allegedly fabricated complaints about Plaintiff's job performance, subjected Plaintiff to unreasonable standards more stringent than those imposed on other contractors, and berated Plaintiff's employees with the intent to harm, harass, and financially injure Plaintiff. Plaintiff alleges that it suffered $7,545,541.60 in special damages consisting of lost profits for services that it would otherwise have performed for Defendants had this conduct not occurred. Plaintiff also alleges that Defendants had no excuse to engage in this pattern of conduct against it.

Plaintiff's allegations are completely deficient to support a claim for prima facie tort. First, the general sweeping allegations provide absolutely no indication as to the specific contracts that Plaintiff claims are subject to its prima facie tort claim. Moreover, Plaintiff failed to explain how it arrived at its $7.5 million figure.

Given that the purpose of the special damages pleading requirement is to put Plaintiff on notice as to the exact losses claimed, it is axiomatic that Plaintiff's failure to trace its alleged losses to specific contracts renders its prima facie tort claim invalid. *See Chen v. United States,* 854 F.2d 622, 627 (2d Cir.1988); *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985). Plaintiff's attempt to resurrect its claim with an affidavit purporting to trace its alleged losses also fails in its entirety. The expert report assumes that Plaintiff would have been awarded contracts in New York, Massachusetts, and Vermont in which it was excluded from the bidding process.

This report misses the mark. Plaintiff's allegation that Defendants' maliciously excluded it from the bidding process on future contracts in each of these states in no way establishes, that had Plaintiff participated in the bidding process in each of these states, it would have been awarded a contract. Thus, Plaintiff should have submitted evidence tending to show the net present value of its right to engage in a fair bidding process and not evidence tending to show the value of contracts that Plaintiff may never have received.

In light of this flaw, the Court concludes that even if Plaintiff was permitted to amend its initially deficient pleadings to incorporate the results of its faulty damages report, such an amendment would be futile as the amended pleading would not survive a further motion to dismiss. *See Marchi v. Board of Cooperative Educational Services of Albany,* 173 F.3d 469, 478 (2d Cir.1999); *see also Jones v. New York State Div. of Military and Naval Affairs,* 166 F.3d 45, 51 (2d Cir.1999). In light of these flaws in Plaintiff's pleadings and tender of evidence, the Court was clearly erroneous to deny Defendant's initial summary judgment motion against Plaintiff's prima facie tort claim. It therefore reconsiders this earlier conclusion and grants Defendants' motion for summary judgment on this issue.

G. *Certification of Whether Plaintiff has Standing Under 42 U.S.C. § 1981 for Interlocutory Appeal*

Pursuant to 28 U.S.C. § 1292(b), a district judge may certify an order not otherwise appealable for interlocutory appeal. *See* 28 U.S.C. § 1292(b). The issue certified must involve a controlling question of law as to which there is a substantial

ground for difference of opinion. .*See id.* Additionally, an immediate appeal from the order must materially advance the ultimate termination of the litigation. *See id.* The application for appeal does not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof so orders a stay. *See id.*

 Routine resort to 28 U.S.C. § 1292(b) is disfavored as interlocutory review is designed for "exceptional cases." *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 74, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). Thus, a district court "must carefully assess whether each of the three conditions for certification is met." *S.E.C. v. Credit Bancorp, Ltd.,* 103 F.Supp.2d 223, 226 (S.D.N.Y.2000). Moreover, even if this Court certifies the issue for interlocutory appeal, the appellant still "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting *Fisons, Ltd. v. United States,* 458 F.2d 1241, 1248 (7th Cir.1972)).

 In the instant case, the Court concludes that certification is appropriate. First, Defendants' reliance on *Arlington Heights* to argue that Plaintiff's do not have standing to assert their § 1981 claim involves a controlling question of law, as its resolution, either way, "materially affects the outcome of the case." *New York Racing Ass'n v. Perlmutter Publishing,* 959 F.Supp. 578, 583 (N.D.N.Y.1997). Second the language in *Arlington Heights* Defendants rely upon to support their argument that Plaintiff does not have standing, although not persuasive to this Court, does provide substantial grounds for a difference of opinion. Third, because the Court has granted summary judgment to Defendants on Plaintiff's pendent state law claims, a ruling in Defendants' favor on the issue certified to the Court of Appeals would terminate the instant litigation.

As a result the Court grants Defendants' motion to certify the issue of whether Plaintiff has standing under 42 U.S.C. § 1981 to the United States Court of Appeals for the Second Circuit. Until the Court of Appeals either declines to review this certification or issues a decision affirming this Court's conclusion, all proceedings in the current case are stayed.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendants' motion for reconsideration is GRANTED in part and DENIED in part; and it is further

ORDERED that Defendants' motion for summary judgment is GRANTED in part and DENIED in part; and it is further

ORDERED that Defendants' motion for certification as to the issue of whether Plaintiff has standing under 42 U.S.C. § 1981 is GRANTED; and it is further

ORDERED that the issue of whether Plaintiff has standing under 42 U.S.C. § 1981 is hereby certified for immediate interlocutory appeal to the United States Court of Appeals for the Second Circuit; and it is further

ORDERED that the Clerk of the Court shall serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.