**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Eric GAGNON, Defendant.**

**No. 02–CR–127.**

United States District Court,
N.D. New York.

March 11, 2003.

Glenn T. Suddaby, United States Attorney, Northern District of New York, Albany, NY, Carlos A. Moreno, Assistant U.S. Attorney, Of Counsel.

Gerstenzang, O'Hern, Hickey & Gerstenzang, Attorneys for Defendant, Albany, NY, Thomas J. O'Hern, Of Counsel.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. *INTRODUCTION*

Defendant Eric Gagnon ("the defendant") was charged in a two-count superseding indictment, filed on September 13, 2002, with conspiracy to possess with intent to distribute, and distribution of, marijuana in violation of 21 U.S.C. § 846, and attempt to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841, 846. The defendant, as part of an omnibus motion, moved to suppress the evidence seized from his tractor trailer. After it was determined in a Memorandum–Decision and Order ("MDO") on July 24, 2002, that no probable cause existed to arrest the defendant prior to the search and seizure, (*see* Docket No. 22), and the issue was narrowed to whether the defendant voluntarily consented to the search of his tractor trailer, a suppression hearing was held on August 15, 2002, and August 23, 2002, in Utica and Albany, New York.

By Memorandum–Decision and Order ("MDO₂") dated November 6, 2002, the defendant's motion to suppress was granted on the basis that he did not consent to the warrantless search. *United States v. Gagnon*, 230 F.Supp.2d 260 (N.D.N.Y. 2002). On November 21, 2002, the United States of America ("United States" or "government") filed a motion for reconsideration.

## II. *FACTUAL/PROCEDURAL BACKGROUND*

The findings of fact relevant to the instant motion are expansively set out in MDO₂ granting the defendant's motion to suppress. *Id.* at 261–66. These findings will not be repeated. Suffice it to say that it was found that the defendant had very poor English language skills, and that he did not give voluntary consent to a warrantless search by several law enforcement officers. In reaching this conclusion, the testimony of the defendant and his brother was found to be credible. Less credible was the testimony of two law enforcement officers who solicited the alleged consent, and a motel clerk who spoke to the defendant that night.

Though the standard for determining whether a consent took place does not focus solely on the defendant's individual characteristics, but rather on whether an objective law enforcement officer would have believed consent was given, the fact that the defendant was found to be virtually without any substantive English language skills heavily influenced the decision. Specifically, it was held that the defendant could not have possibly exhibited actions or speech that would indicate to a reasonable law enforcement officer that consent had been given. It was also held

that sufficient evidence was presented that the defendant's alleged "consent," even if "voluntary," was coerced.

In its instant motion, the government seeks reconsideration of MDO₂ granting the motion to suppress, and of the MDO that no probable cause existed to arrest the defendant prior to the search and seizure. Two main grounds for said motion can be gleaned from the United States' moving papers: (1) newly discovered evidence; and (2) evidence previously thought to be cumulative but is now considered material.

The evidence that the government claims is newly discovered comes from a prison inmate, Lester Crandall ("inmate Crandall" or "Crandall"), incarcerated at the same time as the defendant. Crandall claims, in a letter dated September 8, 2002,[1] that the defendant, in English, told him that he had testified falsely at the suppression hearing, and that he had, in fact, verbally consented to the search of the tractor-trailer. Interestingly, the letter from inmate Crandall contained very specific facts about the case and even contained the defendant's case number—02–CR–127. It was received by the AUSA approximately 58 days before the MDO₂ granting the defendant's suppression motion was issued.

After receiving Crandall's letter, the government undertook what it called an investigation. Phone calls were made to prosecutors, a defense attorney, and a parole officer. Nine days after the MDO₂ granting the defendant's motion to suppress was filed, and approximately 67 days after receipt of his letter, the government finally interviewed Crandall. At no time prior to the filing of MDO₂ was Crandall's existence and alleged testimony ever disclosed in the form of a motion to reopen the hearing or to stay the issuance of the decision until the government had an opportunity to investigate his claims.

The evidence previously thought to be cumulative by the government comes from prison employees and tape recordings. The United States apparently had this information prior to or during the suppression hearing, but decided it was merely cumulative of the testimony of the two law enforcement officers and motel clerk.

### III. DISCUSSION

#### A. Timeliness of motion to reconsider

■ Unless otherwise governed by Fed. R.Civ.P. 60, motions for reconsideration proceed under Local Rule 7.1(g). *See Bath Petroleum Storage, Inc. v. Sovas,* 136 F.Supp.2d 52, 56 (N.D.N.Y.2001). Local Rule 7.1(g) controls the instant motion, as it seeks reconsideration of an order that is not "final." *Sharpe v. Conole,* 123 F.Supp.2d 87, 88 n. 2 (N.D.N.Y.2000). Though couching it in language that implies reconsideration of only one prior Order, the United States essentially seeks reconsideration of two prior rulings—the MDO that there was not probable cause to arrest the defendant prior to the search of the tractor-trailer, made July 24, 2002 (*see* Docket No. 22); and MDO₂ that the defendant did not possess the English skills needed to allow a reasonable officer to conclude that consent to search the tractor-trailer was given, made November 6, 2002 (*see* Docket No. 35).

#### 1. July 24, 2003—MDO

Local Rule 7.1(g) provides, in relevant part, that "[m]otions for reconsideration

---

1. The letter was addressed to the United States Attorney and to the attention of the assistant prosecuting this case.

... may be served not later than **TEN CALENDAR DAYS** after the entry of the challenged judgment, order, or decree." (emphasis in original). With respect to the first issue sought to be reconsidered, the United States points to footnote 13 of the November 6, 2002, MDO₂ granting the defendant's motion to suppress. Specifically, the footnote states that "[i]t has already been determined that the officers did not have probable cause to arrest Gagnon prior to the search. (*See* Docket No. 22, Memorandum–Decision and Order granting in part and denying part defendant's omnibus motion)." *Gagnon*, 230 F.Supp.2d at 273 n. 13. Clearly, the footnote does not make the finding that no probable cause existed; it merely references the prior MDO. That prior MDO was entered on July 24, 2002. Thus, in order to have the finding reconsidered, pursuant to Local Rule 7.1(g), the United States was required to challenge it within ten days of July 24, 2002. This motion to reconsider, which contained the challenge to this decision was not made until November 21, 2002. It is therefore untimely.

### 2. *November 6, 2003—MDO₂*

▮ The United States also seeks reconsideration of the November 6, 2002, MDO₂ granting the defendant's motion to suppress. At first glance, it appears that this, too, is untimely, as more than **"TEN CALENDAR DAYS"** elapsed between November 6, 2002, and November 21, 2002, when the motion to reconsider was filed. It is "acknowledge[d] that L.R. 7.1(g) on its face appears to set forth a very straightforward requirement, but in conjunction with the Federal Rules, [it] does not really mean '*calendar* days,' but '*business* days'." *United States v. Chiochvili*, 103 F.Supp.2d 526, 529 (N.D.N.Y.2000) (emphasis in original). Excluding weekend days and a holiday, exactly ten days passed from the date of

MDO₂ granting the defendant's motion to suppress to the date the United States filed its motion to reconsider. The motion to reconsider MDO₂ granting the defendant's motion to suppress is therefore timely and will be discussed.

### B. *Merits of motion to reconsider MDO₂*

▮ While the government's motion to reconsider the MDO₂ granting the defendant's motion to suppress is timely, it fails on its merits. In deciding whether to grant such a motion, a "clearly erroneous" standard is employed. *John and Vincent Arduini Inc. v. NYNEX*, 129 F.Supp.2d 162, 167 (N.D.N.Y.2001); *United States v. Bocio*, 105 F.Supp.2d 1, 2 (N.D.N.Y.2000). This high burden is imposed "in order to dissuade repetitive arguments on issues that have already been considered by the court," and "to ensure finality and prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *See Ruiz v. Commissioner of the Dept. of Transp. of the City of New York*, 687 F.Supp. 888, 890 (S.D.N.Y.1988).

▮ "Generally, the prevailing rule in the Northern District recognizes only three possible grounds upon which motions for reconsideration may be granted: they are (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." *Chiochvili*, 103 F.Supp.2d at 528 (internal quotations and citation omitted); *see also Bartz v. Agway, Inc.*, 849 F.Supp. 166, 167 (N.D.N.Y.1994). The government asserts that reconsideration is proper in light of newly discovered evidence in the form of a letter and interview with inmate Crandall, who allegedly spoke to the defendant in English at the jail. Crandall's information

was confirmed by another inmate, from county sheriff department employees, and tape recordings that were originally viewed by the government as merely cumulative evidence. According to the government, all demonstrate that the defendant possessed sufficient English-speaking skills to allow the officers who searched the tractor-trailer to reasonably believe that he consented; and that it was therefore incorrect to find the defendant's testimony (as opposed to the law enforcement officers') to be credible.

To succeed, the government must prove that the evidence was newly discovered, and not merely unknown to it at the time of the original suppression hearing; that the evidence is material and not merely cumulative; that the new evidence will probably produce a result different than that reached in MDO₂ granting the defendant's motion to suppress; and that the failure to learn of the new evidence before was not the result of a lack of due diligence on its part. *See United States v. Oates*, 445 F.Supp. 351, 353 (E.D.N.Y. 1978) (citing 2 Wright, Federal Practice and Procedure § 557, at 515; 8A Moore's Federal Practice, P. 33.03(1)). While the new evidence proffered by the government, if found to be credible and probative, *may* alter the conclusion of MDO₂, the government cannot satisfy the remaining requirements to have MDO₂ reconsidered or the hearing reopened.

At the outset, it is noted that the government's only alleged new evidence is the affidavit, and if a rehearing were granted, testimony of inmate Crandall. Mention is made of others working or incarcerated in the prison who can testify as to the defendant's English-speaking capabilities, but no names are listed and no affidavits are submitted. The government seems to argue that this other evidence was originally viewed as merely cumulative. If not, and

the government is instead arguing that it, too, is newly discovered evidence, the result is the same. Both the newly discovered evidence and the cumulative evidence will be discussed.

### 1. *Cumulative Testimony*

■ The defendant was incarcerated for many months before both MDOs were filed. It is assumed that all of these individuals (prison personnel or other inmates) spoke to the defendant during that time, in order to form their opinions as to his language capabilities. Nothing prevented the government from offering the testimony of these witnesses at the suppression hearing. The fact that the government was not aware of inmate Crandall's existence until after the hearing is of no matter. The government, fully aware that the sole issue in the suppression hearing was whether the defendant consented to the search, and the obvious dependence that answering this question has on the defendant's English language skills, should have discovered who the defendant spoke with while incarcerated in order to bolster its position. The fact that the government relied only upon the testimony of the officers involved, and the motel desk clerk, is not the defendant's fault. Thus, the government should have been able to obtain this information in due diligence. It chose not to use the testimony of these individuals at the hearing.

One of the government's central arguments is that while it may have been aware of individuals who could allegedly establish the defendant's proficiency with the English language, it viewed that evidence as simply cumulative of the officers' testimony. For support, the government cites *United States v. Bayless*, 201 F.3d 116 (2d Cir.), *cert. denied*, 529 U.S. 1061, 120 S.Ct. 1571, 146 L.Ed.2d 474 (2000). This argument is not well taken. The

Second Circuit in *Bayless* agreed that the newly offered evidence in issue was cumulative. *Id.* at 131–32. That is not the case here. The alleged testimony of these other individuals would not have been cumulative. These individuals allegedly had the opportunity to communicate with the defendant in a setting different than that presented by the search. In other words, the circumstances presented a view of the question—the defendant's language skills—that was independent of, and perhaps corroborative of, the testimony of the officers. It did not involve the officers, who had an obvious interest in the affirmance of the legality of the search. Rather, it bolstered the officers' testimony that the defendant clearly understood that he was consenting to a search. Had this information been available and presented at the suppression hearing, more caution may have been exercised before coming to the conclusion that the defendant and his brother testified credibly, and that the officers did not.

### 2. *Newly Discovered Evidence*

■ For the purposes of this motion, it is accepted that the government could not have been aware of Crandall's information prior to the suppression hearing. However, reconsideration is still improper. According to the government, Crandall sent a letter[2] to then United States Attorney Joseph Pavone, detailing his conversations with the defendant, and alleging that the defendant told him, in proper and understandable English, about how he testified falsely; and that he truly did understand that he was consenting to a search. The letter was received by the government on September 9, 2002, a few weeks after the conclusion of the suppression hearing, but nearly a full two months prior to the issuance of the $MDO_2$ in question. The government was free to bring this alleged new evidence to light after the hearing while the motion to suppress was pending. At the very least, a request to delay the issuance of the decision for a reasonable time to enable the government to investigate and perhaps move to reopen the hearing would have been warranted. It would seem especially appropriate to do so in light of the amount of weight the government now attaches to the letter (and resulting affidavit), it being the lone concrete piece of evidence attached to its motion for reconsideration. The government chose not to do so.

Perhaps in anticipation of this very argument, the government responds that it undertook an investigation to establish whether Crandall was telling the truth before formally presenting the evidence; and that the investigation was not completed until after it talked to inmate Crandall on November 15, 2002. This response is rejected on its face. It makes little sense for the government to doubt the truth of what Crandall alleged if, as the government argues, there were many other individuals in the prison who could testify as to the defendant's English-speaking skills. Thus, the consideration of the letter is rejected insofar as the government wants it considered in determining the defendant's language skills in general. Any argument that what is important in the letter is not the general fact that the defendant clearly understood and spoke English, but rather

2. While it is not doubted that inmates have a certain legal aptitude, Crandall's letter disturbingly resembles a well prepared, and well informed, legal document. Crandall was aware of very particular facts about the defendant's case, including specific dollar amounts, locations, and names. He used legal terminology and, at times, applied the law to the facts of the defendant's case. Crandall was even aware of the defendant's case number, and the assistant United States Attorney assigned to the case.

the specific admissions by the defendant that establish he consented on that particular occasion, is also rejected. This argument has its basis in the general argument, and essentially amounts to the same conclusion.[3]

In addition, even assuming a proper and careful investigation was needed to establish that Crandall was indeed telling the truth about the defendant's admission and the proposition—that the defendant clearly understood and spoke English—that the government already wholeheartedly accepted, said investigation should have been concluded long before the $MDO_2$ of November 6, 2002, was issued. The government claims that after it received Crandall's letter, it began the investigation by obtaining his criminal history, and contacting the relevant attorneys involved in his case. The government alleges that his defense attorney originally said he would speak to him and then to the prosecutor, but did not do so. Instead, according to the government, Crandall's defense attorney informed the government that it could speak to him directly. The government then obtained the identification of Crandall's parole officer before finally interviewing him on November 15, 2002.

While the truth of these allegations of investigation is not here challenged, the fact that it took over two months to complete these somewhat simple, rudimentary tasks, which essentially was comprised of a few phone calls and a visit to Crandall, somewhat undermines the notion that the government believed that what Crandall had to say was important, and does not inspire a conclusion of due diligence. At the very least, due diligence required a speeding up of the process so that the information could come to light prior to the $MDO_2$ being filed. That was not done in this case.[4]

## IV. CONCLUSION

The government will not now be permitted to relitigate an issue already decided. An issue on which the government had months to prepare and gather witnesses and testimony. An issue on which the supposed cumulative and newly discovered evidence was, or should have been, in the government's hands and brought to the attention of the Court at the hearing, or, at the very least, prior to the issuance of $MDO_2$.

The government's motion for reconsideration, and to reopen the suppression hearing for the allowance of additional evidence must be denied. Insofar as it relates to reconsideration of the MDO that no probable cause existed to arrest the defendant prior to the search and seizure, the government's motion is untimely. Neither the alleged cumulative evidence nor new evidence warrants a reconsideration of $MDO_2$ or to reopen. The cumulative evidence was not, in fact, cumulative at all of the testimony of the two law enforcement officers and the motel clerk. Any new evidence was not obtained with due diligence.

---

3. It must be noted that the defendant has raised a number of facts that, if true, would form the basis for a very strong attack upon Crandall's credibility. In light of this decision, that issue need not be considered.

4. The circumstantial evidence suggests that the government may have decided to wait until the suppression decision was issued before exploring the Crandall letter. If the decision was favorable to the government—no need to investigate further. If unfavorable— investigate and move to reconsider and reopen. Otherwise, the timetable is rather odd:

1. September 9, 2002—letter received from Crandall;
2. November 6, 2002—unfavorable decision filed; and
3. November 15, 2002—Crandall interviewed and signs affidavit.

**22**

Further, the existence of the alleged new evidence should have been brought to the Court's attention when it was discovered, some considerable time before the $MDO_2$ granting the defendant's motion to suppress was issued.

Accordingly, it is

ORDERED that the United States of America's motion for reconsideration and to reopen the suppression hearing is DE-NIED.

IT IS SO ORDERED.